IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :     CRIMINAL ACTION

     v.      :

SAMUEL FREEMAN      :     NO. 06-205-03/06-207-01

**FILED**

SEP 29 2008

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

**MEMORANDUM**

**Stengel, J.**                                                       **June  , 2008**

On April 16, 2008, after an approximately four-week jury trial, Samuel Freeman was convicted of conspiracy to distribute cocaine base ("crack"), distribution of 5 grams or more of cocaine base ("crack") on April 7, 2005, distribution of 50 grams or more of cocaine base ("crack") on February 27, 2006, and 14 counts of use of a communication facility in furtherance of a drug trafficking crime. On April 18, 2008, Freeman filed a Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c), arguing that the evidence presented was insufficient to support his convictions for conspiracy and use of a communication facility. The Government argues that the evidence was sufficient to support the jury's verdict. For the reasons set forth below, I will deny Freeman's motion in its entirety.

A defendant challenging the sufficiency of the evidence bears a heavy burden. Granting relief under Rule 29 is "confined to cases where the prosecution's failure is clear." United States v. Leon, 739 F.2d 885, 891(3d Cir. 1984). In reviewing such a motion, I must view the evidence in the light most favorable to the Government and may not weigh the evidence or make credibility determinations. United States v. Giampa, 758 F.2d 928, 934-35 (3d Cir. 1985). Relief is only appropriate "if no reasonable juror could accept the evidence as sufficient to support the conclusion of the Defendant's guilt beyond a reasonable doubt." United States v. Coleman, 811 F.2d 804, 807

(3d Cir. 1986) (citing United States v. Castro, 776 F.2d 1118, 1125 (3d Cir. 1981)).  Stated another way, I must determine whether "a reasonable jury believing the Government's evidence could find beyond a reasonable doubt that the Government proved all the elements of the offenses."  United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991); Coleman, 811 F.2d at 807.

Freeman first challenges his conspiracy conviction by asserting that the evidence at trial demonstrated that he was involved only in a "buyer-seller" relationship with others named in the Indictment, and that he was not in a conspiracy with his co-defendants.  Specifically, Freeman contends that the evidence at trail established that he and his co-defendants were independent drug sellers, with no unity of purpose, who did not share customers or profits.

A conspiracy charge requires the Government to prove beyond a reasonable doubt the following elements: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together between the defendant and some other person to achieve that goal.  United States v. Pressler, 256 F.3d 144, 149 (3d Cir. 2001) (quoting United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999)).  The Government may rely entirely on circumstantial evidence to prove these elements.  Gibbs, 190 F.3d at 197 (citations omitted).  While a mere buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish a conspiracy, the United States Court of Appeals for the Third Circuit has also reasoned that "even an occasional supplier (and by implication an occasional buyer for redistribution) can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation."  Id. at 197-98 (citing United States v. Price, 13 F.3d 711, 728 (3d Cir. 1994); United States v. Theodoropoulos, 866 F.2d 587, 594 (3d Cir. 1989)).  Courts have articulated factors that, while not necessarily dispositive, tend

to show that a defendant is a member of a conspiracy and not merely in a buyer-seller relationship. These factors include the length of the affiliation between the defendant and the conspiracy; use of an established method of payment; the extent to which transactions are standardized; evidence of a demonstrated level of mutual trust; repeated familiar dealings with members of the conspiracy; transactions involving large amounts of drugs; purchases on credit; knowledge by the buyer that the seller sold drugs to many other people and knowledge by the seller that the buyer was a re-seller; use of code when conducting transactions; and solicitations of advice about commercial aspects of the drug trade. Gibbs, 190 F.3d at 199-200.

During the trial in this case, the Government presented substantial evidence through witness testimony and numerous, recorded telephone conversations that supports the jury's conclusion that there was a conspiracy to distribute crack and that Freeman was a member of this conspiracy. Co-defendant Eric McFall testified that Freeman supplied both powder cocaine and crack cocaine to him, and that he had also supplied powder cocaine to Freeman. McFall testified that he first learned how to "cook" powder cocaine into crack by observing Freeman do so. McFall also testified to the following chain of events. On February 27, 2006, he received money up front from Freeman so that he could purchase powder cocaine for him from a supplier. After McFall delivered the powder cocaine to Freeman, Freeman proceeded to cook it into crack. However, the cooking process resulted in less crack than expected. Freeman then telephoned McFall to complain about the product he had received, and McFall in turn contacted the supplier. Eventually, McFall suggested that Freeman and the supplier meet to discuss the problem. McFall also testified that, on April 13, 2006, he accompanied Freeman to pick up powder cocaine from Freeman's supplier, and that he and Freeman cooked the powder into crack together at McFall's residence. Additionally, there was

evidence that Freeman's supplier, co-defendant Zephaniah Burrows, had guaranteed the quality of this powder cocaine and agreed to take it back if McFall was not satisfied after cooking it into crack. There was also evidence that Burrows had suggested Freeman watch McFall cook the powder cocaine and call if there were any problems with the drugs.

Furthermore, the testimony of McFall and other co-defendants, particularly Marvin Brown, Michael Clark, Dora Williams, and Ellis Suah, established the various roles of the members of the conspiracy of which Freeman was a member. Freeman obtained ounce quantities of powder cocaine from Burrows and others, cooked the powder into crack at Williams's house often with the assistance of Brown, and then distributed the crack to Brown, Clark, and Saleemah Waters for further resale. Freeman stored the crack at Waters's home, and had Waters make crack deliveries and collect money for him. Clark testified about how he often met with Freeman to exchange money and/or drugs, and how Freeman would often call to check the status of Clark's drug sales and determine whether Clark needed to be re-supplied with additional crack. In short, the evidence clearly showed repeated familiar dealings between Freeman and his co-defendants; frequent communications among them; transactions made on credit, referred to as "fronting" drugs; and extensive use of code language.

Based on all of this evidence, a reasonable jury could certainly find beyond a reasonable doubt that the Government proved that the relationship between the various co-defendants, including Freeman, went beyond a mere buyer-seller relationship. Furthermore, a reasonable jury could find that Freeman and the other co-defendants shared a unity of purpose to distribute crack cocaine, that they intended to distribute crack cocaine, and that they entered into an agreement to do so. Consequently, Freeman's first argument challenging his conspiracy conviction is meritless.

4

In the alternative, Freeman asserts, that if the Government has proven a conspiracy in this case, that conspiracy is different from the one charged in the Indictment and, thus, the jury's verdict as to this count must be vacated. Specifically, Freeman contends that the charges in this case flowed from an investigation into a criminal organization known as the Brizon Crime Organization (the "BCO"), and that the Government, in its efforts to obtain authorization for the wiretap that ultimately led to the instant Indictment, had represented that Freeman was a member of this organization. Consequently, Freeman contends that the charges of conspiracy in the Indictment involved a conspiracy between Freeman and the BCO, and that the evidence at trial did not prove this particular conspiracy.

This argument is meritless. Just because the Government's initial investigation may have targeted the BCO does not mean that the Government could not charge individuals with other crimes that it uncovered during the course of its investigation, or that the Government could not modify the target of its investigation. Consequently, whether the BCO was the Government's initial target and whether the Government represented that Freeman was a member of this organization is of no consequence. Count One on the Indictment charged Freeman along with Winston Gibson, Marvin Brown, Eric McFall, Zephaniah Burrows, Michael Clark, Ellis Suah, Saleemah Waters, and Dora Williams with conspiracy to distribute crack between January 2002 and April 2006. As part of this conspiracy, the Indictment alleged that Freeman obtained cocaine from various co-defendants, converted it into crack, and distributed crack to other co-defendants. The Indictment further alleged that Freeman distributed powder cocaine to some co-defendants, that he provided crack to Michael Clark for distribution, and provided crack to Saleemah Waters for storage at her residence. At trial, Marvin Brown, Eric McFall, Michael Clark, Ellis Suah, and Dora Williams each testified about their

5

participation and the participation of others, including Freeman, in this crack distribution conspiracy. There is no doubt that the conspiracy charged in Count One of the Indictment is the conspiracy for which the Government presented evidence at trial and for which the jury found Freeman guilty.

Lastly, Freeman argues that because no conspiracy has been proven beyond a reasonable doubt, he must be acquitted on the counts charging him with use of a communication device in furtherance of a conspiracy. This argument is moot and we need not address its merits as there is sufficient evidence to support the conspiracy conviction.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

    v.

SAMUEL FREEMAN                                    NO. 06-205-03/06-207-01

FILED

MICHAEL ___ Z, Clerk
Dep. Clerk
By ___

## ORDER

    **AND NOW**, this __ th day of June, 2008, upon consideration of Defendant Freeman's Motion for Judgment of Acquittal (Docket No. 200), and the response thereto, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

BY THE COURT:

LAWRENCE F. STENGEL, J.

0/12/08
fax Sykes, Stark, Pinnen